**Rene LAPREE, Plaintiff,**

v.

**PRUDENTIAL FINANCIAL and the Prudential Insurance Company of America, Defendants.**

**No. 4:05 CV 00094.**

United States District Court, S.D. Iowa, Central Division.

Aug. 17, 2005.

Gordon R. Fischer, Bradshaw Fowler Proctor & Fairgrove, Des Moines, IA, for Plaintiff.

Daniel J. McMahon, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Edna S.

Bailey, Jason M. Kuzniar, Chicago, IL, Ross W. Johnson, Faegre & Benson, Des Moines, IA, for Defendant.

## ORDER

GRITZNER, District Judge.

This matter comes before the Court on Plaintiff's Motion to Remand.[1] Plaintiff Rene LaPree is represented by Gordon Fischer; Edna Bailey represents Defendants Prudential Financial and The Prudential Insurance Company of America (jointly referred to as "Prudential"). The parties have not requested a hearing, and the Court finds no need for oral argument. The matter is fully submitted and ready for disposition.

## I. FACTS

Plaintiff LaPree was employed by the State of Iowa until June 17, 2003, when she stopped working due to symptoms related to thoracic outlet syndrome. LaPree was insured under a disability plan ("the Policy") sponsored by her employer and under-written by Defendant Prudential. LaPree filed a claim for short- and long-term disability benefits through her policy. Prudential denied her claim for long-term disability. LaPree's appeal of the decision was denied. Her second appeal was also denied. In lieu of a third appeal, LaPree exercised the option to file a lawsuit under the Employee Retirement Income Security Act "ERISA."[2]

On May 26, 2004, LaPree filed a one count Petition in the Iowa District Court for Polk County alleging Prudential breached the terms of her disability policy. On September 8, 2004, LaPree moved to amend her petition to include a claim for breach of written contract and a bad faith claim. The motion was granted, and the petition stood amended as of November 2, 2004. In her prayer for relief, pursuant to Iowa Rule of Civil Procedure 1.403(1), LaPree requested "judgment against defendants in an amount to be determined at trial."[3]

During the state court litigation, LaPree attempted to settle her claim against Prudential by sending demand letters. On July 23, 2004, LaPree sent Prudential a demand letter asserting that she was entitled to benefits under her policy amounting to $528,000. She stated she was willing to settle the entire claim for $400,000. On August 4, 2004, LaPree sent another demand letter stating her benefits under the policy, minus Social Security disability benefits amounted to $254,916.40. Accounting for emotional distress and bad faith denial of benefits, LaPree indicated she was willing to settle the entire claim for $350,000. On September 15, 2004, a third letter was sent calculating benefits

---

1. Plaintiff's motion is captioned "Plaintiff's Motion to Dismiss Defendant's Removal Action" (Clerk's No. 9). The Court will regard the action as more properly a Motion to Remand, and will proceed accordingly.

2. Prudential argues that the State of Iowa is the plan sponsor; therefore, there is no cause of action under ERISA. 29 U.S.C. § 1003(b)(1) ("The provisions of this subchapter shall not apply to any employee benefit plan if—(1) such plan is a governmental plan (as defined in section 1002(32) of this title) ....."). A "governmental plan" within the meaning of ERISA, is "a plan established or maintained for its employees by the Govern-

ment of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32). LaPree does not challenge this issue. Accordingly, this claim is not preempted.

3. Iowa R. Civ. P. 1.403(1) states in pertinent part, "A pleading which sets forth a claim for relief .... shall not state the specific amount of money damages sought but shall state whether the amount of damages meets applicable jurisdictional requirements for the amount in controversy. The specific amount and elements of monetary damages sought may be obtained through discovery."

minus $871.00 per month for Social Security disability benefits and her workers' compensation settlement of $125,000, leaving the total claim against the policy at a minimum of $149,969.90, not including bad faith damages which she estimated at $50,000. LaPree indicated she was willing to settle the entire claim for $201,969.90.

On November 22, 2004, Prudential filed a motion to dismiss Counts II and III of LaPree's Amended Petition. Discovery proceeded while the motion was pending, and on January 25, 2005, LaPree sent Prudential another demand letter. Therein, LaPree again calculated her actual damages at $149,969.90 (her total benefits under the policy minus offset from Social Security disability benefits and her workers' compensation settlement), and the bad faith claim at $50,000. LaPree stated she would settle the entire claim for $175,000. On January 27, 2005,[4] Prudential served LaPree with interrogatories. Pertinent to this motion was Interrogatory No. 17, which stated,

> Identify the damage amount Plaintiff seeks to recover and provide an itemization of the damages sought.

On February 11, 2005, Prudential received LaPree's responses; her answer to Interrogatory 17 was,

> See General Objections. Without waiving the foregoing objections, Plaintiff directs you to see Plaintiff's Demand Letter of January 25, 2005.

On February 23, 2005, Prudential removed this action pursuant to 28 U.S.C. § 1446, alleging original jurisdiction based on diversity of citizenship. LaPree is an Iowa citizen, and Prudential is a New Jersey corporation whose principal place of business is also in New Jersey. Prudential alleges this case did not become removable until February 11, 2005, when it received LaPree's answers to interrogatories revealing the amount in controversy.

On March 21, 2005, LaPree filed the present Motion arguing Prudential's removal was untimely and the action must be remanded. LaPree argues Prudential knew the amount sought in damages long before it received the answers to interrogatories. Prudential resists arguing the time for removal is not triggered by the filing of the petition when the petition is silent on the amount of damages; rather, removal is triggered under 28 U.S.C. § 1446(b) (" § 1446") by the filing of "other paper" that reveals the amount in controversy. Prudential contends that the answer to Interrogatory No. 17 revealed for the first time the amount in controversy; therefore, removal was not triggered until that time.

## II. DISCUSSION

■ There is no dispute in the present case that the requirements for diversity jurisdiction under 28 U.S.C. § 1332 are met: the parties are from different states and the amount in controversy exceeds the jurisdictional minimum. However, the parties dispute whether this case was timely removed under the thirty-day requirement of 28 U.S.C. § 1446(b).

Prudential argues the amount in controversy was not known until it received LaPree's answer to Interrogatory No. 17 on February 11, 2005. LaPree counters that the answer to Interrogatory No. 17 and the January 25, 2005, demand letter were based on the same facts alleged in the Petition as well as in her previous demand letters. Accordingly, LaPree's position is that when Prudential received the Petition, or at the very latest the July 23, 2004, demand letter, Prudential knew the amount in controversy was in excess of

---

**4.** In the Notice of Removal, Prudential states that it sent the Interrogatories to LaPree on January 27, 2005, but in Resistance to this Motion, Prudential states that the Interrogatories were sent on December 27, 2004.

$75,000; therefore, removal on February 11, 2005, was untimely by more than six months. LaPree asserts removal at this point in the litigation is forum shopping to avoid adverse rulings in state court and not because Prudential lacked knowledge of the amount in controversy.[5]

Title 28 U.S.C. § 1446(b) provides in pertinent part,

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b).

■ "Generally, a complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Larkin v. Brown*, 41 F.3d 387, 389 (8th Cir.1994) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). If the allegations as to the amount in controversy are challenged by the defendant, "then the plaintiff must establish jurisdiction by a preponderance of the evidence." *Kopp v. Kopp*, 280 F.3d 883, 884–85 (8th Cir.2002) (citing *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)).

■ Similarly, in a removal case based on diversity, the proponent of federal jurisdiction bears the burden of proving by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional minimum. *Trimble v. Asarco, Inc.*, 232 F.3d 946, 959 (8th Cir.2000), *abrogated on other grounds by, Exxon Mobil Corp. v. Allapattah Servs., Inc.*, ―― U.S. ――, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (" '[T]he party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence.' ") (quoting *Missouri v. W. Sur. Co.*, 51 F.3d 170, 173 (8th Cir.1995)); *see In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834–35 (8th Cir.2003) ("Where, as here, the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum, the removing party, Minnesota Mutual, must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.").[6]

---

**5.** The state court made the following rulings: (1) on November 8, 2004, the court granted LaPree's motion to amend the petition; (2) on December 9, 2004, the court denied Prudential's motion for protective order to limit discovery to the administrative record; and (3) on March 11, 2005, the court denied Prudential's motion to dismiss counts II and III and allowed LaPree to amend her complaint.

This case was removed on February 23, 2005; therefore, the state court's order of March 11, 2005, has no legal effect.

**6.** In *Kopp v. Kopp*, the Eighth Circuit explained this seeming contradiction of legal standards,

When the 'legal certainty' standard announced in *Larkin* is combined with the

LaPree contends that based on the allegations in her Petition, the amount of damages was determinable; therefore, Prudential knew when it received the original notice that the amount in controversy met the jurisdictional minimum. Alternatively, LaPree asserts the demand letters of July 23, 2004, and August 4, 2004, unambiguously established that the claims met the jurisdictional minimum of $75,000.

## A. Allegations in the Petition

Prudential argues that the removing party bears the burden of proving the amount in controversy exceeds the jurisdictional minimum by a preponderance of the evidence. Citing *Larkin v. Brown*, Prudential asserts that the Eighth Circuit found the burden is satisfied in cases where defendant's removal is based on the plaintiff's answers to interrogatories. *Larkin v. Brown*, 41 F.3d 387, 389 (8th Cir.1994) ("In determining the amount in controversy pursuant to a motion to dismiss, answers to interrogatories serve as

the equivalent of affidavits to either support or defeat diversity jurisdiction."). Prudential's assertion overstates the holding in *Larkin*.

First, *Larkin* was a diversity case originating in federal court, not a removal case. *Id.* at 388. Second, once the amount in controversy was *challenged* by the defendant, plaintiff failed to prove *to a legal certainty*, that his claim was for more than the jurisdictional minimum. *Id.* Third, the plaintiff's case could only satisfy the jurisdictional minimum by an award of punitive damages and under the applicable state law, punitive damages were not available. *Id.* at 389. Fourth, in answer to defendant's interrogatory, plaintiff stated that he sought "$50,000" in damages, but at the time, the jurisdictional minimum required that the amount in controversy be in excess of $50,000. Fifth, the *Larkin* language Prudential relies on is dicta. The court did not find that actions are not removable until the plaintiff responds to a damages interrogatory. The lesson in

burden of proof established in *McNutt*, it appears that the relevant legal rule is that the proponent of diversity jurisdiction must prove a negative by a preponderance of the evidence in order to avoid dismissal of his or her case.

.    .    .    .    .

We have no quarrel with this formulation of the applicable law, but we think that the same principle can be stated just as readily in the affirmative: The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000. We emphasize that *McNutt* does not suggest that unliquidated damages in some specific amount must be proved before trial by a preponderance of evidence.

.    .    .    .    .

Confusion may arise because the relevant jurisdictional fact, that is, the issue that must be proved by the preponderance of

evidence, is easily misidentified. The jurisdictional fact in this case is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are: In other words, an amount that a plaintiff claims is not 'in controversy' if no fact finder could legally award it. In one of our more extensive discussions of this issue, we upheld jurisdiction, even though the jury ultimately awarded less than the statutory minimum, because jurisdiction 'is measured by the amount properly pleaded or as of the time of the suit, not by the end result.' That holding implicitly suggests that jurisdiction was proper because, based on information known to the court at the time jurisdiction was challenged, the jury reasonably could have awarded more than the statutory minimum, even if the jury ultimately did not do so. "If access to federal district courts is to be further limited it should be done by statute and not by court decisions that permit a district court judge to prejudge the monetary value of an unliquidated claim." *Kopp*, 280 F.3d at 885–86.

*Larkin* is that the proponent of diversity must present competent proof of the amount in controversy to avoid dismissal. *Kopp*, 280 F.3d at 885 (citing *Larkin*, 41 F.3d at 389).

Prudential also cites *In re Minnesota Mutual Life Ins. Co. Sales Practices Litigation*, 346 F.3d 830, 834–35 (8th Cir. 2003), and argues LaPree's post-complaint demand letters are an insufficient basis for removal in the Eighth Circuit. *In re Minnesota Mutual Life* originated as a state court class action and was removed to federal court. *Id.* Plaintiffs moved to remand, arguing the court lacked subject matter jurisdiction because, inter alia, the amount in controversy did not exceed the jurisdictional minimum. *Id.* at 834. The district court granted summary judgment for the defendants without addressing the issue of subject matter jurisdiction; nonetheless, the Eighth Circuit addressed the issue on appeal asserting, "we consider a challenge to subject matter jurisdiction even when first raised on appeal." *Id.* The court reasoned that because the complaint did not allege a specific amount in damages, the removing defendant was required to prove that the amount in controversy exceeded the jurisdictional minimum by a preponderance of the evidence. *Id.* Prudential argued that the appropriate measure of the amount in controversy was the face value of the life insurance policies at issue in the complaint. *Id.* The court agreed. *Id.* at 835.

> If [plaintiffs] would receive the equitable relief that they have requested, they would be due the face value of their policies upon their death . . . . [T]he face value is the amount that Minnesota Mutual would eventually have to pay Appellants if they were to prevail on their equitable claims. We find that the amount in controversy exceeds the statutory minimum and that diversity jurisdiction exists.

*Id.* In what was clearly dicta, the court opined that the post-complaint settlement letters offered by defendants as *additional* proof of the amount in controversy added support to the valuation of the claim but by themselves were arguably not sufficient to establish the amount in controversy. *Id.* ("Although Appellants' letter offers *further support for the valuation of the claims*, we do not decide here whether a post-complaint settlement offer alone is sufficient to establish the requisite amount in controversy.") (emphasis added).

As with the complaint in *In re Minnesota Mutual Life*, the allegations in LaPree's petition in the present case set forth information whereby Prudential should have known the amount in controversy exceeded the jurisdictional minimum. Here, if LaPree were to receive the relief requested—the face value of her long-term disability policy—then the amount in controversy would clearly be met.[7] The court in *In re Minnesota Mutual Life* required no more proof than the face value of the policy at issue in the complaint. *Id.* LaPree's demand letters, just like the settlement letters in *In re Minnesota Mutual Life*, supply additional proof that the amount in controversy is satisfied.

In a per curiam opinion, the Eighth Circuit considered whether the thirty-day

---

7. LaPree's policy provided 60 percent of her monthly earnings, or $1836.60 per month, from the time of disability until age 66. LaPree was 43 when she left her employment; therefore, according to the allegations in LaPree's petition, Prudential owes her 264 months of coverage. Although LaPree may not ultimately be awarded that amount due to offsets, that is not the standard necessary for jurisdiction. *Kopp*, 280 F.3d at 885 ("The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000.").

removal period is triggered by filing a petition that does not disclose the amount sought in damages as in the present case. *In re Willis*, 228 F.3d 896 (8th Cir.2000) (per curiam). In *Willis*, the plaintiff filed a personal injury action in Missouri state court without specifying an amount in damages as allowed under Missouri law. *Id.* During discovery, plaintiff filed an "Offer of Judgment" in the amount of $75,001. *Id.* Within thirty days of receiving the offer of judgment, defendant removed the case to federal court, and plaintiff moved to remand. *Id.* The district court granted plaintiff's motion, reasoning defendant's removal was untimely because it was the petition, not the offer of judgment, that triggered the thirty-day removal period. *Id.* The Eighth Circuit granted defendant's petition for writ of mandamus and reversed the district court's ruling. *Id.*

> We find the thirty-day time limit of section 1446(b) begins running upon receipt of the initial complaint only when the complaint explicitly discloses the plaintiff is seeking damages in excess of the federal jurisdictional amount. This rule 'promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know.' Further, this rule prevents a plaintiff from disguising the amount of damages until after the thirty-day time limit has run to avoid removal to federal court. We therefore grant the petition for mandamus and direct the district court to reassume jurisdiction of the case and reinstate the case on its docket.

*Id.* (quoting *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir.1992)).

In *Nguyen v. Kautz*, 125 F.Supp.2d 364, 364 (S.D.Iowa 2000), the court interpreted *In re Willis* as the Eighth Circuit's "bright line rule" regarding what triggers the thirty-day removal period. In *Nguyen*, plaintiff filed his petition in state court on January 13, 2000, alleging "the amount in controversy exceeded the jurisdictional minimum of small claims court." *Id.* Ten months later, defendant removed the case. *Id.* Recognizing that Iowa law prohibits a plaintiff from stating the amount of damages in personal injury petitions, the court reasoned that *In re Willis* places a burden on the plaintiff in such states to affirmatively disclose that the amount in controversy exceeds the federal jurisdictional minimum, or the case remains removable for up to one year. *Id.* at 365 (citing Iowa Code § 619.18).

> [*In re Willis* ] has great practical implications for plaintiffs. It means that in Iowa, plaintiffs who want the 30–day time limit to begin running immediately must do one of two things: (1) state in their petition that the amount in controversy exceeds the federal jurisdictional requirement, if Iowa Code § 619.18 is interpreted to allow such a statement; or (2) serve the defendant with a statement of the same separate from the petition. If the plaintiff never serves the defendant with notice that the amount in controversy exceeds the federal jurisdictional amount, the defendant will be able to remove the case for up to one year after the commencement of the action.

*Id.* The court found removal was timely and denied the motion to remand. *Id.*

District court orders remanding cases due to removal defects are not reviewable. 28 U.S.C. § 1446(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, . . ."). Accordingly, there are few Circuit Court of Appeal opinions on the issue of what triggers removal; however, most of Circuit Courts ·of Appeal that have dealt with the issue have required some kind of affirmative act from the plaintiff before removability is triggered. *See, e.g., Whitaker v. Am. Telecasting,*

*Inc.,* 261 F.3d 196, 206 (2d Cir.2001) ("[T]he removal petition [must] include the amount in controversy and the address of each party. While this standard requires a defendant to apply a reasonable amount of intelligence in ascertaining removability, it does not require a defendant to look beyond the initial pleading for facts giving rise to removability."); *Foster v. Mut. Fire, Marine & Inland Ins. Co.,* 986 F.2d 48, 54 (3d Cir.1993) (footnote omitted) (quoting *Rowe v. Marder,* 750 F.Supp. 718, 721 n. 1 (W.D.Pa.1990), *aff'd,* 935 F.2d 1282 (3d Cir.1991)) ("[T]he relevant test [for removability] is not what the defendants purportedly knew, but what these documents said. . . . '[A]t a minimum, anything considered a pleading must be something of the type filed with a court.'"); *Chapman,* 969 F.2d at 163 (finding that in the Fifth Circuit, the thirty-day period is not triggered by the initial pleading unless, on its face, it affirmatively reveals that the damages plaintiff seeks exceed the minimum jurisdictional amount noting, "[w]e adopt this rule because we conclude that it promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know."); *Huffman v. Saul Holdings Ltd. Partnership,* 194 F.3d 1072, 1077–78 (10th Cir.1999) (adopting the approach that the removal period is not triggered until defendant could "intelligently ascertain" removability, reasoning it should come from some voluntary act of the plaintiff, but not requiring the receipt of an actual written document).

Although *In re Willis* lacks particulars, it does appear to be the Eighth Circuit's holding on whether a petition that does not state an amount in damages triggers removability, thereby foreclosing LaPree's argument that her petition set forth enough facts from which the amount of damages could have been calculated. *Id.* Therefore, despite the seemingly logical conclusion that Prudential could have calculated LaPree's damages based on the allegations in the complaint, it appears that under *In re Willis* and in line with other Circuits, removal was not triggered until LaPree made an affirmative statement of her damages. The next question, then, is whether LaPree's demand letters constitute such an affirmative act, or whether it was not until LaPree answered the interrogatory that the statute was triggered.

### B. Competent Proof of Removability

Prudential argues that under the rule set forth in *Larkin,* removal was not triggered until LaPree admitted in answer to interrogatories that her claim exceeded the amount in controversy. As the Court previously discussed, *Larkin* allows that answers to interrogatories are proof of the amount in controversy, but that opinion does not set forth a bright line rule that the removal period is delayed until the defendant is in receipt of plaintiff's answers to interrogatories. *Larkin,* 41 F.3d at 389.

Prudential cites and appears to rely on a line of cases out of the Northern District of Illinois addressing Northern District of Illinois Local Rule 81.2 ("LR 81.2") which mandates that upon removal, if the complaint does not contain an *ad adamnum* in excess of the jurisdictional minimum amount in controversy, the removing defendant must provide a statement of good faith belief *and a response from plaintiff,* either through an interrogatory response or a response to request for admission, that the amount in controversy is in excess of the jurisdictional minimum. *Id.* at 1019–20.

One of the cases Prudential cites is *Rubel v. Pfizer Inc.,* 361 F.3d 1016 (7th Cir. 2004). In *Rubel,* although the Seventh Circuit was without jurisdiction to review the merits of the district court's remand

decision, the court made general observations about the application of the local rule and the necessary proof of the amount in controversy upon removal. *Id.* at 1020. "Removal is proper if the defendant's estimate of the stakes is plausible; plaintiffs can't prevent removal by refusing to concede that the controversy exceeds the jurisdictional minimum or by insisting that injunctions do not count toward the amount in controversy." *Id.*[8] The local rule involving removal in the Southern District of Iowa is LR 81.1(g) which merely requires that if the state court petition does not indicate either the required diversity of citizenship or the amount in controversy, the removing party must include a statement of facts that the jurisdictional requirements are satisfied. LR 81.2

Relying on a line of cases out of the Fifth Circuit, LaPree asserts that under the plain language of § 1446(b), *any paper*

that is served or otherwise which comes to the Defendants' attention, and shows the matter may be removable, begins the running of the thirty days. *Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759, 761–62 (5th Cir.2000). In *Addo*, plaintiff filed a lawsuit in state court against her deceased mother's life insurance carrier for denying her claim. *Id.* The complaint asked for $5000 in actual damages, which represented the face value of the policy, and punitive damages "not to exceed $65,000." *Id.* at 760. Addo served defendant with a letter a month later, offering to settle the claim for $250,000. *Id.* Several months passed, and defendant served the plaintiff with interrogatories, asking the plaintiff to confirm that her claim did not exceed $75,000. *Id.* When plaintiff refused to respond, defendant removed the case to federal court, and plaintiff moved to remand arguing removal was untimely. *Id.* The district court denied plaintiff's mo-

---

**8.** There is a split within the Northern District of Illinois about the application of LR 81.2 and whether the statutory thirty-day removal period is delayed until the defendant is able to secure confirmation from the plaintiff. *Compare Gallo v. Homelite Consumer Products*, 371 F.Supp.2d 943, 948–49 (N.D.Ill.2005) (agreeing with other courts in the district that compliance with local rule regarding jurisdictional statement in a removal action did not delay the 30–day removal period from triggering when the allegations in plaintiff's complaint demonstrate a "reasonable probability" the amount in controversy exceeds the jurisdictional minimum stating, "if a plaintiff cannot prevent removal by refusing to concede that the jurisdictional minimum is met where a reasonable reading of the complaint indicates that it is, there is no reason to allow a defendant in such cases to delay removal until it has received the plaintiff's confirmation or denial.") *and McCoy by Webb v. Gen. Motors Corp.*, 226 F.Supp.2d 939, 941 (N.D.Ill.2002) (reasoning that compliance with the local rule did not obviate "defendant's responsibility to ascertain from a reasonable and common-sense reading of the complaint whether the action is removable. Nor does the Local Rule provide a safe harbor that encourages defen-

dants to wait for discovery responses that simply confirm what was obvious from the face of the complaint; in such cases, defendants are not insulated from a remand to state court.") *and Campbell v. Bayou Steel Corp.*, 338 F.Supp.2d 896, 902 (N.D.Ill.2004) ("Resolving all doubts against removal, this court concludes that in circumstances where a defendant can easily ascertain that the amount in controversy exceeds $75,000.00, application of LR 81.2(a) would contravene the purpose of the removal statute's 30–day timing requirement.") *with Zeedyk v. Fed. Exp. Corp.*, No. 03 C 9191, 2004 WL 417202, at *2 (N.D. Ill. Mar 01, 2004) (finding strict compliance with the local rule which requires that if the state court complaint is ambiguous to the amount in controversy, defendant must secure specification of damages from plaintiff prior to removal) *and Turner v. Goodyear Tire & Rubber Co.*, 252 F.Supp.2d 677, 680 (N.D.Ill.2003) (finding that when the state complaint is ambiguous regarding amount sought, "[a] defendant is on notice that the plaintiff is seeking above $75,000 only after the plaintiff makes an explicit statement to that effect", then removal within thirty days of receiving plaintiff's response is timely).

tion and eventually granted a motion for summary judgment in favor of defendant. *Id.* On appeal, in a case of first impression, the Fifth Circuit reasoned that a demand letter did constitute "other papers" within the meaning of the removal statute. *Id.* at 762 ("Holding that a post-complaint letter, which is not plainly a sham, may be 'other paper' under § 1446(b) is consistent with the purpose of the removal statute to encourage prompt resort to federal court *when a defendant first learns* that the plaintiff's demand exceeds the federal jurisdictional limit.") (emphasis added).

In *Addo,* the plaintiff stated in her complaint that she sought punitive damages that *were not* in excess of $65,000. *Id.* at 760. The actual and punitive damages combined did not meet the jurisdictional minimum; therefore, her claim *was not* removable when it was filed. *Id.* Plaintiff then *changed* the amount she sought in punitive damages by way of a demand letter, asking above the jurisdictional minimum. *Id.* Defendant waited several months, served the plaintiff with interrogatories; when she refused to concede that she was seeking less than the jurisdictional minimum, the defendant removed the case. *Id.* The Fifth Circuit found that the demand letter constituted "other papers" within the meaning of § 1446(c); therefore, the case became removable upon receipt of that letter, making defendant's removal several months later untimely. *Id.* at 762.

LaPree also cites *Kreinbring v. Alternative Claims Services, Inc.,* a case from the Northern District of Iowa. *Kreinbring v. Alternative Claims Services, Inc.,* No–C03–123–LBR, 2004 WL 1293927 (N.D.Iowa May 27, 2004). In that case, similar to the case at bar, the court was faced with determining when the thirty-day removal period was triggered, since the face of the complaint did not allege a specific amount of damages in keeping

with Iowa law. *Id.* at *1 (citing Iowa R. Civ. P. 1.403(1)). Citing *In re Minnesota Mutual,* the court noted that there was no definitive answer in the Eighth Circuit regarding whether demand letters constitute "other papers" within the meaning of § 1446(b), but found such support in the Fifth Circuit's *Addo* opinion. *Id.* at *2–3.

> The *Addo* court also found that 'other paper' must result from a voluntary act of the plaintiff that gives the defendant notice of the changed circumstances that support federal jurisdiction. Here, the court finds that the demand letter at issue was a voluntary act by Kreinbring's counsel and that the demand letter permitted Defendants to reasonably ascertain that the amount in controversy exceeded $75,000.00.

*Id.* (citation omitted).

Prudential discourages this Court from following *Kreinbring,* asserting it is an unpublished opinion that has not been followed by a single court and it is undetermined whether its holding will be followed. Instead, Prudential asks the Court to follow the reasoning from a case out of the District of Massachusetts, wherein the court considered whether deposition transcripts that were not filed nor served on all parties constituted "other papers" within the meaning of § 1446(b). *Mill–Bern Associates, Inc. v. Dallas Semiconductor Corp.,* 69 F.Supp.2d 240 (D.Mass.1999). In a lengthy opinion discussing the statutory interpretation of the term "other papers", the court determined that "deposition transcripts" did not share the "common defining characteristics with an amended pleading, a motion, or a court order" and therefore, did not constitute "other papers". *Id.* at 244.

LaPree cites several cases where the court found a demand or settlement letter did constitute "other papers" that triggered removability. *See e.g., Cohn v.*

*Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."); *Addo*, 230 F.3d at 762 ("[T]he [demand] letter in this case complies with our rule that 'other paper' must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction."); *Vermande v. Hyundai Motor Am., Inc.*, 352 F.Supp.2d 195, 200–01 (D.Conn.2004) ("Although the Second Circuit has not addressed this issue, most courts have held—and this Court agrees—that § 1446(b) is not limited to papers filed in the litigation and that the reference to 'other paper' in the statute can include pre-removal correspondence between the parties, including, as here, settlement offers."); *Hall v. Delta Air Lines, Inc.*, 340 F.Supp.2d 596, 599 (D.Virgin Islands 2004) ("Correspondence between counsel, including a settlement demand letter, may constitute an 'other paper' upon which removability can be based under section 1446(b)."); *Archer v. Kelly*, 271 F.Supp.2d 1320, 1322 (N.D.Okla.2003) (finding a demand letter disclosing plaintiff's damages exceed the jurisdictional minimum was sufficient proof of the amount in controversy, regardless of the fact that defendant rejected the offer); *Martin v. Mentor Corp.*, 142 F.Supp.2d 1346, 1349 (M.D.Fla.2001) ("Defendants may use a variety of documents, including a written settlement demand, as

an 'other paper' under 28 U.S.C. § 1446(b) to determine if the case is removable.").[9]

The purpose of § 1446(b) is to commence the running of the thirty-day removal period as soon as the defendant has received requisite written notice that the case is removable. That information will necessarily vary from case-to-case. This case-by-case approach, in lieu of a bright line rule, is in keeping with the wide discretion the statute allows the district court in determining whether the removal procedure has properly been followed. In the present case, LaPree's first demand letter asked for an amount above the jurisdictional minimum. Although each subsequent demand letter indicated LaPree was willing to settle the case for less than the previous offer, each settlement offer was in excess of the jurisdictional minimum. It defies reason to suggest Prudential did not have the necessary jurisdictional facts after receiving the September 15, 2004, demand letter which set forth all applicable offsets, if not earlier.

Prudential ultimately based removal on one of LaPree's demand letters, specifically, the January 25, 2005, letter. Prudential does not argue that the letter is a sham; it merely asserts that the removal clock did not start to tick until *LaPree pointed* to that letter as representing the amount in controversy. LaPree *voluntarily* sent the demand letters and risked removal when she did so. LaPree was not required to go so far as to send a notice to

9. Prudential asserts that under Federal Rules of Evidence 408 and Iowa Rule of Evidence 5.408, settlement proposals are inadmissible to prove liability or the amount of a claim, and therefore the court is prohibited from using them to determine the amount in controversy. This argument has been advanced before and has failed. *See Cohn*, 281 F.3d at 840 n. 3 (finding that a settlement letter submitted upon removal as proof of the amount in controversy did not violate Rule 408 because it "was not offered to establish the

amount of [defendant]'s liability, but merely to indicate [plaintiff]'s assessment of the value of the [claim]"); *Archer*, 271 F.Supp.2d at 1323 (finding Rule 408 " 'does not require the exclusion [of evidence] when the evidence is offered for another purpose' ", . . . , and offering it to show the amount in controversy exceeds the jurisdictional minimum, *is* such a purpose) (quoting Fed.R.Evid. 408). The argument likewise fails in this Court on the same reasoning.

the Prudential inviting them to remove the case to federal court.

## CONCLUSION

Although LaPree's petition set forth the relief requested and a simple calculation would produce an amount in excess of the jurisdictional minimum, LaPree must affirmatively disclose the amount in controversy to trigger the thirty-day removal period. *In re Willis*, 228 F.3d at 896. LaPree took such affirmative action in providing the demand letters, particularly the letter of September 15, 2004. Under the circumstances of this case, LaPree's demand letters constituted "other paper" and provided the necessary affirmative proof that the jurisdictional amount was satisfied in accordance with 28 U.S.C. § 1446(b). Therefore, removal was triggered well before February 11, 2005. Accordingly, the Court finds Defendants' removal was untimely, and Plaintiff's motion to remand (Clerk's No. 9) must be **granted**. This case is remanded to Iowa District Court for Polk County pursuant to 28 U.S.C. § 1447(c).

**IT IS SO ORDERED.**