# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FORTUNE DYNAMIC, INC., a
California Corporation,
            *Plaintiff-Appellant,*

            v.

VICTORIA'S SECRET STORES BRAND
MANAGEMENT, INC., a Delaware
Corporation,

            *Defendant-Appellee.*

No. 08-56291

D.C. No.
2:07-cv-02962-R-
JTL

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
November 2, 2009—Pasadena, California

Filed August 19, 2010

Before: Thomas G. Nelson, Jay S. Bybee, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Bybee

12235

**COUNSEL**

James C. Fedalen, Huang, Fedalen & Lin, LLP, Encino, California, for the plaintiff-appellant.

Diana M. Torres, Kirkland & Ellis LLP, Los Angeles, California, for the defendant-appellee.

**OPINION**

BYBEE, Circuit Judge:

In February 2007, Victoria's Secret ran a one-month marketing campaign promoting its new line of BEAUTY RUSH product. As part of that promotion, Victoria's Secret stores sold or gave away a hot pink tank top with the word "Delicious" written across the chest in silver typescript. Fortune Dynamic, Inc. ("Fortune"), the owner of the incontestable trademark DELICIOUS for footwear, sued Victoria's Secret for trademark infringement. The district court granted summary judgment in favor of Victoria's Secret. Mindful that "summary judgment is generally disfavored in the trademark arena," *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002) (quotation marks omitted), we reverse and remand for trial.

I

Since 1987 Fortune has been in the business of designing and selling footwear for women, young women, and children. In 1997, Fortune began using DELICIOUS as a trademark on its footwear for young women. Two years later, in 1999, Fortune registered the DELICIOUS trademark for footwear on the principal register of the U.S. Patent and Trademark Office.

For most of the time relevant to this appeal, Fortune depicted DELICIOUS in standard block lettering with a capital "D."[1]

Fortune spends approximately $350,000 a year advertising its footwear. In the three-year period from 2005 to 2007, Fortune sold more than 12 million pairs of DELICIOUS shoes. DELICIOUS shoes are featured on Fortune's website and in its catalogs, and have appeared in fashion magazines directed specifically to young women, including *Cosmo girl*, *Elle girl*, *Teen People*, *Twist*, *In Touch*, *Seventeen*, *Latina*, *ym*, *Shop*, *CB*, *marie claire*, and *Life & Style*. DELICIOUS footwear is available in authorized retail outlets throughout the United States.[2]

Victoria's Secret is a well-known company specializing in intimate apparel. It sells a wide variety of lingerie, beauty products, and personal care products in its 900 retail stores. In February 2007, Victoria's Secret launched a line of personal care products under the trademark BEAUTY RUSH. At the same time, it started a promotion that included giving away a gift package of BEAUTY RUSH lip gloss and—most importantly for our case—a pink tank top to anyone who purchased $35 of beauty product.[3] The tank top was folded inside a clear plastic pouch with the lip gloss and a coupon for a future BEAUTY RUSH purchase. Across the chest of the tank top was written, in silver typescript, the word "Delicious" with a capital "D." On the back, in much smaller lettering, there appeared the word "yum," and the phrase "beauty rush"

---

[1]In June 2007 (after this lawsuit was filed), Fortune applied to register DELICIOUS in a stylized font for use on clothing.

[2]In November 2006, L'egent International, Ltd. approached Fortune to explore the possibility of L'egent's subsidiary, Chaz, using Fortune's DELICIOUS Trademark on clothing and related accessories. Chaz signed a final licensing agreement in May 2007. Chaz has yet to use the DELICIOUS mark in commerce.

[3]Forty-four Victoria's Secret stores sold the tank top for $10 with any purchase of beauty product.

was written in the back collar. Victoria's Secret models were featured wearing the tank top, as were mannequins on in-store display tables. Victoria's Secret distributed 602,723 "Delicious" tank tops in connection with its BEAUTY RUSH promotion, which lasted until March 2007. Those tank tops not sold or given away during the promotion were sold at Victoria's Secret's semi-annual sale a few months later.

Victoria's Secret executives offered two explanations for using the word "Delicious" on the tank top. First, they suggested that it accurately described the taste of the BEAUTY RUSH lip glosses and the smell of the BEAUTY RUSH body care. Second, they thought that the word served as a "playful self-descriptor," as if the woman wearing the top is saying, "I'm delicious." No one at Victoria's Secret conducted a search to determine whether DELICIOUS was a registered trademark, but Victoria's Secret had run a very similar promotion several months earlier, this one in conjunction with the launch of its VERY SEXY makeup. That promotion also included a tank top, but that tank top was "black ribbed" with "Very Sexy" written in hot pink crystals across the chest. VERY SEXY is a Victoria's Secret trademark.

In March 2007, Fortune filed a complaint alleging that Victoria's Secret's use of "Delicious" on its tank top infringed Fortune's rights in its DELICIOUS mark. After the district court denied Fortune's motion for a preliminary injunction, Victoria's Secret moved for summary judgment. In its opposition to Victoria's Secret's motion for summary judgment, Fortune submitted two pieces of expert evidence: the Marylander survey (with an accompanying declaration) and the Fueroghne declaration, both of which we discuss below.

Invoking its duty to "scrutinize carefully the reasoning and methodology underlying the expert opinions offered," the district court excluded all of Fortune's proffered expert evidence. Without any of Fortune's expert evidence before it, the district court granted Victoria's Secret's motion for summary

judgment, holding that the factors used to determine whether there is a likelihood of confusion "weigh[ed] in favor of Victoria's Secret," and that Fortune's claims were "entirely barred by the fair use defense." Fortune brought this timely appeal.

## II

**[1]** The Lanham Act creates a comprehensive framework for regulating the use of trademarks and protecting them against infringement, dilution, and unfair competition. 15 U.S.C. § 1051 *et seq.* To prove infringement, a trademark holder must show that the defendant's use of its trademark "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1125(a)(1)-(a)(1)(A). Protecting against a likelihood of confusion—what we have called the "core element of trademark infringement," *Brookfield Commc'ns v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999) (quotation marks omitted)—comports with the underlying purposes of trademark law: "[1] ensuring that owners of trademarks can benefit from the goodwill associated with their marks and [2] that consumers can distinguish among competing producers." *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002).

**[2]** Eight factors, sometimes referred to as the *Sleekcraft* factors, guide the inquiry into whether a defendant's use of a mark is likely to confuse consumers: (1) the similarity of the marks; (2) the strength of the plaintiff's mark; (3) the proximity or relatedness of the goods or services; (4) the defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers of the defendant's product. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). This eight-factor analysis is "pliant," illustrative rather than exhaustive, and best understood as simply providing helpful guideposts. *Brookfield Commc'ns*, 174 F.3d at 1054; *see E &*

*J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992) ("This list of factors, while perhaps exhausting, is neither exhaustive nor exclusive."). The *Sleekcraft* factors are not a scorecard, a bean-counter, or a checklist. *Thane*, 305 F.3d at 901. "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." *Brookfield Commc'ns*, 174 F.3d at 1054.

The Lanham Act provides some affirmative defenses, *see* 15 U.S.C. § 1115(b), one of which allows an accused infringer to avoid liability by showing that it has used the plaintiff's trademark "fairly," *id.* § 1115(b)(4). To establish a fair use defense, the defendant must show that it used the term "fairly and in good faith only to describe [its] goods or services." *Id.* We have recognized a nominative fair use defense and a classic fair use defense. Nominative fair use applies "where a defendant has used the plaintiff's mark to describe the *plaintiff's product*," *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) (emphasis added), whereas classic fair use—the only defense at issue here—involves a defendant's use of a descriptive term "in its primary, descriptive sense," *id.* at 1150-51 (quotation marks omitted).

We review the district court's grant of summary judgment *de novo*, and must view the evidence in the light most favorable to Fortune. *In re Caneva*, 550 F.3d 755, 760 (9th Cir. 2008). Summary judgment is improper if there are "any genuine issues of material fact"—facts which, "under the governing substantive law, could affect the outcome of the case." *Id.* (quotation marks and ellipses omitted). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 761 (quotation marks and ellipsis omitted).

## III

This case is yet another example of the wisdom of the well-established principle that "[b]ecause of the intensely factual

nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Entrepreneur Media*, 279 F.3d at 1140 (quotation marks omitted). We are far from certain that consumers were likely to be confused as to the source of Victoria's Secret's pink tank top, but we are confident that the question is close enough that it should be answered as a matter of fact by a jury, not as a matter of law by a court. *See Thane*, 305 F.3d at 901 ("Likelihood of confusion is a factual determination.").

The same is true of Victoria's Secret's reliance on the Lanham Act's fair use defense. Although it is possible that Victoria's Secret used the term "Delicious" fairly—that is, in its "primary, descriptive sense"—we think that a jury is better positioned to make that determination. *Cf. KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 609 (9th Cir. 2005) ("*KP Permanent II*") (noting that genuine issues of material fact indicate that the fact finder should determine whether the "defense of fair use has been established").

## A

We begin with the *Sleekcraft* factors as a way of framing our discussion. We are going to discuss each factor, but we will devote most of our attention to the similarity of the marks, the strength of Fortune's mark, the proximity of the goods, and the evidence of actual confusion.

## 1

**[3]** Although some of the *Sleekcraft* factors will not always be helpful in assessing the likelihood of confusion, "the similarity of the marks . . . has always been considered a critical question in the likelihood-of-confusion analysis." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). Three general principles help determine whether marks are similar. First, "[s]imilarity is best adjudged by appearance,

sound, and meaning." *Entrepreneur*, 279 F.3d at 1144. Second, the "marks must be considered in their entirety and as they appear in the marketplace." *GoTo.com,* 202 F.3d at 1206. Third, "similarities are weighed more heavily than differences." *Id.*

Victoria's Secret makes two arguments against finding that the marks are similar. First, Victoria's Secret argues that its use of "Delicious" "differed completely in font, color, size and purpose from" Fortune's mark. Second, Victoria's Secret says that it "is inconceivable that a customer inside a VICTORIA'S SECRET retail store" could believe that the pink tank top with "Delicious" written on it, which was surrounded by BEAUTY RUSH product, could possibly have originated with Fortune Dynamics.

[4] Victoria's Secret is correct that the marks have markedly different appearances. Fortune's mark is written in black, block letters on the inside heel of the shoe and on the shoe box. Victoria's Secret's "Delicious," by contrast, is written in silver cursive lettering across the chest of a hot pink tank top. On the other hand, there are substantial similarities between the marks. First, there is the obvious: the marks sound the same and look similar because they are the same word, "delicious." Moreover, in each case the word "delicious" appears alone, and not adjacent to any other word or symbol. And there is reason to think that they share the same meaning, as they are attached to items of clothing and appear to evoke desirability and pleasure.

[5] Victoria's Secret's second argument is also not without force. It does seem unlikely that a knowledgeable consumer would believe that Fortune, which markets its shoes in a number of different retail outlets, would be selling a tank top in a Victoria's Secret store. The record reveals, however, evidence of individuals (including pop star Brittney Spears) wearing Victoria's Secret's "Delicious" pink tank top on the street. This evidence suggests the possibility of post-purchase

confusion, which, we have held, "can establish the required likelihood of confusion under the Lanham Act." *Karl Storz Endoscopy Am., Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 854 (9th Cir. 2002); *see Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir. 1980). In such instances, at least, when knowledgeable consumers see the "Delicious" tank top outside Victoria's Secret stores, it seems at least plausible that they could be confused as to who produced the tank top.

[6] Thus, in light of the principle that "similarities [between marks] are weighed more heavily than differences" and our recognition of post-purchase confusion, a jury could reasonably conclude that the "similarity of marks" factor weighs in favor of Fortune.

2

We turn next to the strength of Fortune's DELICIOUS mark. As a general matter, "[t]he more likely a mark is to be remembered and associated in the public mind with the mark's owner, the greater protection the mark is accorded by trademark laws." *GoTo.com,* 202 F.3d at 1207. A mark's strength is evaluated conceptually and commercially. *Id.*

[7] A mark's conceptual strength depends largely on the obviousness of its connection to the good or service to which it refers. The less obvious the connection, the stronger the mark, and vice versa. Using a list originally formulated by Judge Friendly, *see Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976), marks are placed in one of five categories, ranging from weakest to strongest: generic, descriptive, suggestive, arbitrary, and fanciful, *GoTo.com*, 202 F.3d at 1207. At one end of the spectrum, generic marks "refer[ ] to the genus of which the particular product is a species," such as "bread" or "door," and "are not registerable" as trademarks. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985). At the other end of the spectrum are arbitrary marks—actual words with no connec-

tion to the product—such as Apple computers and Camel cigarettes, and fanciful marks—made-up words with no discernable meaning—such as Kodak film and Sony electronics that are inherently distinctive and therefore receive "maximum trademark protection." *Entrepreneur*, 279 F.3d at 1141. In the middle are descriptive marks, which "describe[ ] the qualities or characteristics of a good or service" and only receive protection if they acquire secondary meaning, *Park 'N Fly*, 469 U.S. at 194, and suggestive marks, which require a consumer to "use imagination or any type of multistage reasoning to understand the mark's significance" and automatically receive protection, *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1114 (9th Cir. 2010) (quotation marks omitted).

Categorizing trademarks is necessarily an imperfect science. Far from being neatly distinct and discrete, trademark categories often "blur at the edges and merge together." *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (5th Cir. 1983), *overruled in part by KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 116 (2004) ("*KP Permanent I*"). "The labels are more advisory than definitional, more like guidelines than pigeonholes. Not surprisingly, they are somewhat difficult to articulate and to apply." *Id.*; *see also Abercrombie*, 537 F.2d at 9 ("The lines of demarcation . . . are not . . . always bright."). The line between descriptive and suggestive marks is nearly incapable of precise description. *Lahoti v. Vericheck, Inc.*, 586 F.3d 1190, 1197 (9th Cir. 2009) ("[L]egions of trademark lawyers can stay busy arguing about how marks in the middle, not so plainly descriptive, nor so plainly [suggestive], should be categorized.").

[8] "A suitable starting place" for attempting to draw the line between a suggestive and a descriptive mark "is the dictionary." *Zatarains*, 698 F.2d at 792; *see also Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1015 n.11 (9th Cir. 1979) ("While not determinative, dictionary

definitions are relevant and often persuasive in determining how a term is understood by the consuming public . . . ."). With that in mind, two tests help distinguish between a descriptive and a suggestive mark. First, a mark is more likely suggestive if it passes the imagination test, which asks whether the mark "requires a mental leap from the mark to the product." *Brookfield Commc'ns*, 174 F.3d at 1058; *see also* 2 J. McCarthy, Trademarks and Unfair Competition § 11:71 (4th ed. 2004) ("McCarthy") ("Is some reflection or multistage reasoning process necessary to cull some direct information about the product from the term used as a mark?"). "[T]he imagination test is [the] primary criterion for evaluating" whether a mark is suggestive. *Zobmondo*, 602 F.3d at 1116 (quotation marks omitted). Second, a mark is more likely suggestive if it passes the competitor test, which asks whether "the suggestion made by the mark is so remote and subtle that it is really not likely to be needed by competitive sellers to describe their goods." *Id.* at 1117 (quotation marks omitted); McCarthy § 11:68.

"Delicious" carries several different meanings, including "affording great pleasure," "appealing to one of the bodily senses . . . esp[ecially] involving the sense of taste or smell," "delightfully amusing," and—in a definition the dictionary itself calls "obsolete"—"characterized by . . . self-indulgent or sensuous pleasure." Webster's Third New International Dictionary 597 (1993). It "commonly refers to that which is tasted, smelled, or otherwise savored with maximum pleasure and keenest appreciation." *Id.*

**[9]** We think that there is a genuine issue of material fact as to whether Fortune's DELICIOUS mark is suggestive or descriptive. The distinction is important here because if the mark is suggestive, there is a stronger likelihood that a jury could reasonably conclude that the "strength of the mark" factor favors Fortune. On the one hand, some evidence points to a finding that DELICIOUS as applied to footwear is merely descriptive. To the extent "delicious" means "affording great

pleasure," for example, it seems to "directly convey a real and unequivocal idea of some characteristic, function, quality or ingredient of the product or service." MCCARTHY § 11:71. By that definition, DELICIOUS on footwear is nothing more than "self-laudatory advertising," a factor that cuts against categorizing the mark as suggestive. *Id.*; *see Zobmondo*, 602 F.3d at 1116 ("[M]erely descriptive marks need not describe the essential nature of a product; it is enough that the mark describe some aspect of the product." (quotation marks omitted)). On the other hand, a reasonable jury, viewing the evidence in the light most favorable to Fortune, might focus more on the "taste" and "smell" definitions of "delicious." In that event, the connection between DELICIOUS and footwear becomes much more attenuated, indicating that the mark is suggestive because it "requires a mental leap from the mark to the product." *Brookfield Commc'ns*, 174 F.3d at 1058. In contrast with food, to which this definition of "delicious" has a direct connection, one arguably must use some imagination —a "multi-stage reasoning process"—to get from "delicious" to footwear. MCCARTHY § 11:71. "Delicious" is not a descriptor the average consumer would associate with shoes.

**[10]** For the same reasons, other shoe companies are unlikely to need to rely on the word "delicious" to describe their goods. Indeed, we are aware of no other shoe companies, and Victoria's Secret points to none, that use the word "delicious" to describe their product. *See Zobmondo*, 602 F.3d at 1117-18. In sum, because "[w]hich category a mark belongs in is a question of fact," *id.* at 1113, and because the decision as to whether a mark is descriptive or suggestive " 'is frequently made on an intuitive basis rather than as a result of a logical analysis susceptible of articulation,' " *Lahoti*, 586 F.3d at 1197-98 (quoting *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1528 (4th Cir. 1984)), we think a jury should assess the conceptual strength of Fortune's mark in the first instance.

Fortune also presented evidence of the DELICIOUS mark's commercial strength, which takes into account a mark's "ac-

tual marketplace recognition." *Brookfield Commcn's*, 174 F.3d at 1058. Although we have said that a suggestive mark is a "comparatively weak mark," *Sleekcraft*, 599 F.2d at 349, we have also noted that "advertising expenditures can transform a suggestive mark into a strong mark," *Brookfield Commcn's*, 174 F.3d at 1058. Here, Fortune proffered evidence indicating that it spends approximately $350,000 yearly marketing its footwear and that it sold 12,000,000 pairs of DELICIOUS shoes from 2005 to 2007. In addition, Fortune has advertised its DELICIOUS footwear in a variety of popular magazines, including *Cosmo girl*, *Elle girl*, *Teen People*, *Twist*, *In Touch*, *Seventeen*, *Latina*, *ym*, *Shop*, *CB*, *marie claire*, and *Life & Style*. Whatever its ultimate force, this evidence is sufficient to make the relative commercial strength of the DELICIOUS mark a question for the jury.

3

**[11]** A genuine issue of material fact also exists, under the "proximity of goods" factor, with respect to whether Fortune's footwear and Victoria's Secret's tank top are related. "Where goods are related or complementary, the danger of consumer confusion is heightened." *E & J Gallo Winery*, 967 F.2d at 1291. In addressing this factor, our "focus is on whether the consuming public is likely somehow to associate [Fortune's DELICIOUS footwear] with [Victoria's Secret's tank top]." *Brookfield Commc'ns*, 174 F.3d at 1056; *see also Recot, Inc. v. Becton*, 214 F.3d 1322, 1329 (Fed. Cir. 2000) (noting that the relevant question is whether the "goods can be related in the mind of the consuming public as to the origin of the goods").

**[12]** Victoria's Secret contends that the fact that "two goods are used together . . . does not, in itself, justify a finding of relatedness." *Shen Mfg. Co. v. Ritz Hotel, Ltd.*, 393 F.3d 1238, 1244 (Fed. Cir. 2004). We have no objection to that general proposition, but the products at issue in *Shen* did not have the same relationship as the products at issue here. The

court in *Shen* was comparing "cooking classes" and "kitchen textiles," which, the court held, the "consuming public" was unlikely to "perceive . . . as originating from the same source" because "one is a service [and] the other . . . a tangible good." *Id.* at 1245. Here, by contrast, both of the products at issue—female footwear and a female tank top—are "tangible goods" and are targeted to the same consumers: young women. Indeed, the products are complementary. *See, e.g.*, *Avon Shoe Co. v. David Crystal, Inc.*, 279 F.2d 607, 612 (2d Cir. 1960) (noting that shoes and apparel are goods "which serve both common functions and common purchasers"). Given the intuitively close relationship between women's shoes and apparel in the minds of the consuming public, a jury could reasonably conclude that the "proximity of the goods" factor favors Fortune.

4

Not surprisingly, evidence of actual confusion can also support a finding of likelihood of confusion. Perhaps "[b]ecause of the difficulty in garnering such evidence," *Sleekcraft*, 599 F.2d at 353, we have held that "[s]urvey evidence may establish actual confusion," *Thane*, 305 F.3d at 902. Here, the district court refused to admit a survey conducted by Howard Marylander showing that consumers were actually confused by Victoria's Secret's use of the word "Delicious" on its promotional tank top.

Rule 702 states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence . . . a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." FED. R. EVID. 702. Rule 702 imposes a "basic gatekeeping obligation" on district courts to "ensure that any and all scientific testimony"—including testimony based on "technical[ ] or other specialized knowledge"—"is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quotation

marks omitted). The district court must ensure that expert testimony, whether it is based on "professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. We review a district court's decision to exclude expert evidence for abuse of discretion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997).

**[13]** A district court abuses its discretion if it "base[s] its decision[ ] on an erroneous legal standard." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009) (quotation marks omitted). We have long held that survey evidence should be admitted "as long as [it is] conducted according to accepted principles and [is] relevant." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997); *see Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 (9th Cir. 1997); *E & J Gallo Winery*, 967 F.2d at 1292; *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988). Furthermore, we have made clear that "technical inadequacies" in a survey, "including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." *Keith*, 858 F.2d at 480; *see Wendt*, 125 F.3d at 814 ("Challenges to survey methodology go to the weight given the survey, not its admissibility.").

Howard Marylander, who holds an M.B.A. in marketing from the University of Southern California, has been retained in forty-five cases to conduct a survey to determine the likelihood of confusion as to the source of goods or services. Here, Marylander conducted an on-line survey among young women ages fifteen to twenty-four to determine the likelihood of confusion between Fortune's DELICIOUS footwear and Victoria's Secret's tank top. The survey was conducted online using an e-Rewards panel consisting of 211,000 members, ages thirteen to twenty-five. Most survey participants met two criteria: in the past six months they had purchased shoes and a tank top or in the next six months they planned to purchase

shoes and a tank top. Participants were excluded if anyone in their household worked in the advertising industry.

Marylander divided the respondents into a test group and a control group, each composed of 300 members. The members of the test group were exposed to pictures of Fortune's DELICIOUS shoes and Victoria's Secret's "Delicious" tank top, one at a time and in rotated order. They were then asked a series of questions about whether they thought the two marks come from the same company, related companies, or they did not know. The same protocol was followed with the control group, of which there were also 300 members, except that instead of the word "Delicious" on the tank top, one-third of the control group saw the word "Beautiful," one-third saw "Fabulous," and one-third saw "Incredible."

Of those in the test group, 46% believed that the DELICIOUS shoes and the "Delicious" tank top came from the same company. An additional 8% thought that the companies that created the shoes and the tank top were related or associated. In the control group, 18% thought the products came from the same company, and 25% thought the companies were related or associated. Marylander concluded that 54% of the test group (46 + 8) confused the products, as compared to only 43% (18 + 25) in the control group, and that the difference was statistically significant.

According to Marylander, the survey results strongly suggested that there was a likelihood of confusion among consumers between Fortune's DELICIOUS shoes and Victoria Secret's "Delicious" tank top. He based this conclusion on three principal factors: (1) the disparity between the amount of confusion in the test group and the control group (11%); (2) the unusually high disparity between those who believed the products came from the same company (28%); and (3) the fact that the disparity in confusion levels would have been higher if respondents had not seen "beauty rush" in the back

collar, as was the case for those consumers who only saw the tank top on models or mannequins.

**[14]** The district court excluded the Marylander survey because the survey compared the products side-by-side, failed to replicate real world conditions, failed to properly screen participants, and was "highly suggestive." The district court supported most of its reasoning by reference to unpublished district court decisions, only one of which even falls within the Ninth Circuit. The court's one citation to Ninth Circuit precedent, moreover, is not helpful. In support of its conclusion that the survey should not have compared the products "side-by-side," the district court cited our decision in *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817 (9th Cir. 1980), in which we noted that "[i]t is axiomatic in trademark law that 'side-by-side' comparison is not the test." *Id.* at 822. But that statement, far from setting forth a standard for admitting survey evidence, merely provided support for our recognition of the possibility of post-sale confusion. *See id.* at 822 ("Wrangler's use of its projecting label is likely to cause confusion among prospective purchasers who carry even an imperfect recollection of Strauss's mark and who observe Wrangler's projecting label *after the point of sale*. It is axiomatic in trademark law that 'side-by-side' comparison is not the test." (emphasis added)). Indeed, the question of the admissibility of survey evidence nowhere surfaced in *Levi Strauss*. What makes the district court's misuse of *Levi Strauss* even more glaring is its failure to mention *even one* of the numerous cases in which we have held that survey evidence should be admitted "as long as [it is] conducted according to accepted principles and [is] relevant." *Wendt*, 125 F.3d at 814. In sum, we conclude that the district court abused its discretion in excluding the survey because Marylander appears to have conducted the survey in accordance with accepted principles, and because the results of the survey are relevant to the ultimate question whether Victoria's Secret's use of "Delicious" was likely to confuse consumers.

By way of comparison, we approved of a similar survey in *Thane*. There, the expert conducting the survey selected 400 people over the age of 18 who had purchased a bike in the last three years or planned to purchase one within the next year. *See Thane*, 305 F.3d at 902. These bike enthusiasts were interviewed in shopping malls throughout the country. Three hundred of the respondents were shown pictures of Trek products and OrbiTrek products and asked questions about the companies' association. The remaining 100, the control group, were shown the same Trek pictures, but saw pictures from Yukon, a third company, instead of from OrbiTrek. *Id.* at 902 n.6. The principles applied in the Marylander survey are virtually indistinguishable. Three hundred respondents were asked to compare pictures of DELICIOUS shoes and the "Delicious" tank top, and then to answer questions about the companies that produced them. A different group of 300 respondents were shown slightly different pictures and asked the same questions. Marylander then tabulated the results to come to a conclusion regarding the likelihood of confusion.

**[15]** To be sure, as Victoria's Secret argues and as the district court noted, the Marylander survey has a number of shortcomings, including the fact that it was conducted over the internet (thereby failing to replicate real world conditions), may have been suggestive, and quite possibly produced counterintuitive results. But these criticisms, valid as they may be, go to "issues of methodology, survey design, reliability, . . . [and] critique of conclusions," and therefore "go to the weight of the survey rather than its admissibility." *Clicks Billiards*, 251 F.3d at 1263; *cf. Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Viewing the survey in the light most favorable to Fortune, as we must, we conclude that the survey creates a genuine issue of material fact as to whether consumers were confused by Victoria's Secret's use of "Delicious."

5

**[16]** The next *Sleekcraft* factor focuses our attention on the relative sophistication of the relevant consumer, and the degree of care likely to be exercised by that consumer. The reference point for this factor "is the typical buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353. As we explained in *Sleekcraft*, this "standard includes the ignorant and the credulous." *Id.* "We expect" the typical buyer "to be more discerning—and less easily confused—when he is purchasing expensive items." *Brookfield Commc'ns*, 174 F.3d at 1060. "On the other hand, when dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely." *Id.*

The parties vigorously contest the relative sophistication of the young women purchasing their products. Victoria's Secret argues that "[p]urchasers of apparel are considered . . . sophisticated consumers." For support, Victoria's Secret points to one court's observation that "fashion-conscious" young women "are likely to exercise a significant degree of care in purchasing their clothing, since the name of the particular designer is important in the fashion world." *Kookai, S.A. v. Shabo*, 950 F. Supp. 605, 609 (S.D.N.Y. 1997). On the other hand, as Fortune points out, we have noted the absence of a "clear standard . . . for analyzing moderately priced goods, such as non-designer clothing." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005). And a well-respected commentator on trademark law has questioned "the wisdom of . . . sweeping judicial observation[s] about relative sophisticated buying habits based on gender." MCCARTHY § 23:99.

**[17]** We cannot determine with any degree of confidence the relative sophistication of the parties' consumers. Nor are we confident of the implications of finding that the consumers are sophisticated. We think it possible that a discerning consumer might immediately connect the like-named products

more readily than an unsophisticated consumer. Whoever's right, the difficulty of trying to determine with any degree of confidence the level of sophistication of young women shopping at Victoria's Secret only confirms the need for this case to be heard by a jury.

6

There are also genuine issues of material fact with respect to the remaining factors (marketing channels, likelihood of expansion, and Victoria's Secret's intent). We recognize that some evidence related to these factors supports Victoria's Secret. For instance, the fact that Fortune is exclusively a wholesaler that sells its shoes to a number of authorized retail outlets, while Victoria's Secret is primarily a retailer, operating approximately 900 retail stores nationwide under its own name, cuts against Fortune. As for the likelihood of expansion, Fortune has entered a licensing agreement with Chaz to use the DELICIOUS mark on clothing, but there is no indication that Chaz has begun using the license and Victoria's Secret no longer creates any clothing with the word "Delicious" on it. Finally, aside from the fact that Victoria's Secret failed to investigate the possibility that DELICIOUS was being used as a mark before promoting its tank top, there is little evidence that Victoria's Secret intended to trade on Fortune's goodwill.

**[18]** Nonetheless, "[l]ikelihood of confusion is a factual determination," and "district courts should grant summary judgment motions regarding the likelihood of confusion sparingly." *Thane*, 305 F.3d at 901-02. Granting summary judgment in cases in which a majority of the *Sleekcraft* factors could tip in either direction is inconsistent with that principle. Because "a jury could reasonably conclude that most of the [*Sleekcraft*] factors weigh in [Fortune's] favor," *Wendt*, 125 F.3d at 812; *see KP Permanent II*, 408 F.3d at 608, the district court erred in granting Victoria's Secret's motion for summary judgment on the question of likelihood of confusion.

## B

**[19]** We next turn to Victoria's Secret's argument that its use of the word "Delicious" was protected by the Lanham Act's fair use defense. 15 U.S.C. § 1115(b)(4). Long before the Lanham Act was enacted, the Supreme Court explained that "[t]he use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong, even if its effect be to cause the public to mistake the origin . . . of the product." *William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 529 (1924). Congress codified this common law principle in the Lanham Act's fair use defense, which allows a party to use a descriptive word "otherwise than as a mark . . . [and] fairly and in good faith only to describe the goods or services of such party, or their geographic origin." 15 U.S.C. § 1115(b)(4). In establishing that its use was fair, the defendant is not required to "negate confusion." *KP Permanent I*, 543 U.S. at 118. This is because, although the Lanham Act is less than clear on the subject, the Supreme Court recently clarified that, consistent with *Eli Lilly*, "some possibility of consumer confusion must be compatible with fair use." *Id.* at 121. Finally, Victoria's Secret's subjective good faith is relevant to the inquiry, but the overall analysis focuses on whether Victoria's Secret's use of "Delicious" was "objectively fair." *Id.* at 123.

The fair use defense stems from the "undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first." *Id.* at 122; *see Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 200 (1985) (noting that the Lanham Act was not intended to "create an exclusive right to use language that is descriptive of a product"). To avoid monopolization, a company such as Victoria's Secret may invoke a trademark term in its descriptive sense "regardless of [the mark's] classification as descriptive, suggestive, arbitrary, or fanciful." *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 907 (9th Cir. 2003). In other words, how Fortune's DELICIOUS mark is categorized as a matter

of conceptual strength has no bearing on whether Victoria's Secret is entitled to the fair use defense.

According to Victoria's Secret, it should prevail on the fair use defense because, as the Lanham Act provides, it used the term "Delicious" "otherwise than as a mark," "only to describe [its] goods or services," and "in good faith." 15 U.S.C. § 1115(b)(4). We think there is some merit to Victoria's Secret's argument, but ultimately conclude that the question of "fair use," like the question of likelihood of confusion, should be resolved by a jury. We consider each of the "fair use" factors in turn.

1

[20] We first consider whether the district court correctly ruled, as a matter of law, that Victoria's Secret used "Delicious" "otherwise than as a mark." 15 U.S.C. § 1115(b)(4). The Lanham Act defines a trademark as something used "to identify and distinguish . . . goods . . . and to indicate the source of the goods." *Id.* § 1127. To determine whether a term is being used as a mark, we look for indications that the term is being used to "associate it with a manufacturer." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984). Indications of trademark use include whether the term is used as a "symbol to attract public attention," *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 400 (2d Cir. 2009), which can be demonstrated by "the lettering, type style, size and visual placement and prominence of the challenged words," McCarthy § 11:46. Another indication of trademark use is whether the allegedly infringing user undertook "precautionary measures such as labeling or other devices designed to minimize the risk that the term will be understood in its trademark sense." Restatement (Third) of Unfair Competition § 28 cmt. c (1995) ("Restatement"); *see also Packman v. Chicago Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001) (noting, in finding fair use, that the newspaper's

"joy of six" t-shirt "plainly indicat[ed] the Tribune as the source").

**[21]** Here, there is evidence from which a reasonable jury could conclude that Victoria's Secret was using "Delicious" as a trademark. "Delicious" was written in large letters, with a capital "D," and in silver typescript across the chest, suggesting that Victoria's Secret used the word to attract public attention. Further, there is little evidence that Victoria's Secret employed "precautionary measures" to avoid confusion with Fortune's mark. It is true that the word "yum" appeared on the back of the tank top and "beauty rush" appeared in its back collar. But a jury could reasonably conclude that those hard-to-find words did not detract from the overall message broadcast loudly on the front of the shirt, "Delicious." Perhaps most important, Victoria's Secret's used "Delicious" in a remarkably similar way to how it uses two of its own trademarks — PINK and VERY SEXY. PINK is written in bold capital letters on different items of Victoria's Secret clothing, while VERY SEXY was written, in hot pink crystals, across the chest of a similar black-ribbed tank top during a very similar promotion. The fact that Victoria's Secret used "Delicious" in the same way that it uses other Victoria's Secret trademarks could be persuasive evidence to a jury that Victoria's Secret used, or at least intended to establish, "Delicious" as a trademark.

In support of its argument that Victoria's Secret used "Delicious" as a trademark, Fortune attempted to introduce the testimony of expert Dean K. Feuroghne, a forty-year advertising and marketing professional, who would have testified that Victoria's Secret used "Delicious" as a trademark. We think the district court acted within its discretion to exclude this portion of Fueroghne's testimony.[4] The basis of his knowledge regarding trademark use is not entirely clear. More

---

[4]The other portion of Fueroghne's proffered testimony is discussed below.

important, Fueroghne's opinion does not "assist" the jury because the jury is well equipped " 'to determine intelligently and to the best possible degree' " the issue of trademark usage " 'without enlightenment from those having a specialized understanding of the subject involved in the dispute.' " FED. R. EVID. 702 advisory committee's note (quoting Mason Ladd, *Expert Testimony*, 5 VAND. L. REV. 414, 418 (1952)). Even though we agree that this portion of Fueroghne's proffered testimony was properly excluded, we believe that there still remains a genuine issue of material fact as to whether Victoria's Secret used "Delicious" as a trademark.

2

**[22]** A genuine issue of material fact also remains with respect to whether Victoria's Secret used the word "Delicious" "only to describe [its] goods or services." 15 U.S.C. § 1115(b)(4). To prevail on this factor, we have held, a defendant must establish that it used the word "in [its] primary, descriptive sense" or "primary descriptive meaning." *Brother Records*, 318 F.3d at 906. As a practical matter, "it is sometimes difficult to tell what factors must be considered to determine whether a use . . . is descriptive." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 64 (2d Cir. 2000). We agree with the Restatement, however, that the scope of the fair use defense varies with what we will call the descriptive purity of the defendant's use and whether there are other words available to do the describing. *See* RESTATEMENT § 28, cmt. c.

Victoria's Secret makes two points—one factual and one legal—in support of its argument that it used "Delicious" descriptively. As to facts, Victoria's Secret says that it used "Delicious" merely to "describe the flavorful attributes of Victoria's Secret's BEAUTY RUSH lip gloss and other products that feature the same popular fruit flavors." A jury, however, could reasonably conclude otherwise. For one thing, in its advertisements, Victoria's Secret described its BEAUTY

RUSH lip gloss as "deliciously sexy," not delicious. For another, Victoria's Secret's executives testified that they wanted "Delicious" to serve as a "playful self-descriptor," as if the wearer of the pink tank top is saying, "I'm delicious." These examples suggest that a jury could reasonably decide that Victoria's Secret did not use "Delicious" "only to describe its goods." *See* RESTATEMENT § 28, cmt. c. ("If the original meaning of the term is not in fact descriptive of the attributes of the user's goods, services, or business, the [fair use] defense is not applicable.").

As to law, Victoria's Secret argues that it used "Delicious" in a permissible "descriptive sense," even if its use of the word was not technically descriptive. Victoria's Secret points to the Second Circuit's decision in *Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28 (2d Cir. 1997), in which the court noted that the statutory requirement that a defendant use the term "only to describe [its] goods or services" "has not been narrowly confined to words that describe a characteristic of the goods, such as size or quality." *Id.* at 30. Instead, that court observed, "the phrase permits use of words or images that are used . . . in their 'descriptive sense.' " *Id.* Under that standard, the court held that although the defendants' use of the phrase "Seal it With a Kiss" "d[id] not describe a characteristic of the defendants' product," it was used in its " 'descriptive sense'—to describe an action that the sellers hope consumers will take, using their product." *Id.* Other Second Circuit cases have followed the same general approach. *See Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 270 (2d Cir. 1995) (concluding that the defendant had established fair use because its "pine-tree shape" air freshener "describes . . . the pine scent" and "refers to the Christmas season, during which Johnson sells th[e] item"); *B&L Sales Assocs. v. H. Daroff & Sons, Inc.*, 421 F.2d 352, 353 (2d Cir. 1970) (upholding the defendant's use of the phrase "Come on Strong" because it "describe[d] the manner in which [the] clothing would assist the purchaser in projecting a commanding, confident, 'strong' image to his

friends and admirers"). *But see EMI*, 228 F.3d at 65 (holding that, although the word "Swing" "undoubtedly describes both the action of using a golf club and the style of music on the soundtrack," "Swing, Swing, Swing [wa]s not necessarily [descriptive]").

We have no quarrel with the general proposition that the fair use defense may include use of a term or phrase in its "descriptive sense," which in some instances will describe more than just "a characteristic of the [defendant's] goods." McCarthy § 11:49; *see Brother Records*, 318 F.3d at 907. We also agree that a capacious view of what counts as descriptive supports Victoria's Secret's argument that its use of "Delicious" qualifies as fair use. Even under this view of whether a use counts as descriptive, however, we think that a jury could reasonably conclude that Victoria's Secret's use was not fair under this factor, for three reasons.

**[23]** First, although we accept some flexibility in what counts as descriptive, we reiterate that the scope of the fair use defense varies with the level of descriptive purity. Thus, as a defendant's use of a term becomes less and less purely descriptive, its chances of prevailing on the fair use defense become less and less likely. *See* Restatement § 28, cmt. c. And here, a jury could reasonably conclude, for the same reasons it might conclude that DELICIOUS as applied to footwear is not descriptive, *see supra* Part III.A.2, that Victoria's Secret's use of "Delicious" on a pink tank top did not qualify as sufficiently descriptive for Victoria's Secret to prevail on the fair use defense.

**[24]** Second, even if a jury thought that there was some evidence of descriptive use, it could still reasonably conclude that the lack of "precautionary measures" on Victoria's Secret's pink tank top outweighs that evidence. Indeed, the same Second Circuit decisions upon which Victoria's Secret relies support this view. In *Cosmetically Sealed*, for example, "[t]he product name 'Color Splash' "—the defendant's

trademark—"appeared in the center of the display in red block letters, at least twice the size of the lettering for 'Seal it with a Kiss.' " 125 F.3d at 29-30. And "the brand name 'CUTEX' [appeared] in block letters three times the size of the 'Seal it' instruction." *Id.* at 30. *B&L Sales* describes a similar layout: "Directly below this phrase ['Come on Strong'], in somewhat smaller, yet readily visible, block-type print appears the phrase 'With Botany 500.' Thus the copy reads 'COME ON STRONG with Botany 500.' " 421 F.2d at 353. Here, by contrast, the word "Delicious" appeared all by itself on the front of a tank top. Even though other words, such as "beauty rush" and "yum yum," appeared elsewhere on the top, a jury could reasonably conclude that in order to prevail on the fair use defense, Victoria's Secret should have been more careful about "indicating [Victoria's Secret] as the source." *Packman*, 267 F.3d at 639.

**[25]** Finally, there is little doubt that Victoria's Secret had at its disposal a number of alternative words that could adequately capture its goal of providing a "playful self-descriptor" on the front of its tank top. An abundance of alternative words is important because it suggests that Victoria's Secret's use was more suggestive than descriptive. *See* MᴄCᴀʀᴛʜʏ § 11:45 ("[T]o be eligible for . . . fair use, [a] defendant must be using the challenged designation in a descriptive, not merely suggestive, sense."). If so, restricting Victoria's Secret's use of "Delicious" does not implicate the same concerns regarding the monopolization of the lexicon that lie at the heart of the fair use defense. *See KP Permanent I*, 543 U.S. at 122; *see also Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 991 (7th Cir. 2004) ("There are many more ways of suggesting than of describing."); *Abercrombie*, 537 F.2d at 11 ("The English language has a wealth of synonyms and related words with which to describe the qualities which manufacturers may wish to claim for their products . . . ."). Overall, we think a genuine issue of material fact remains as to whether Victoria's Secret used "Delicious" only to describe its goods or services.

3

The last factor of the fair use defense asks whether the defendant has exercised "good faith." We have not given this factor of the fair use defense much attention, but we agree with the Second Circuit that it involves the same issue as the intent factor in the likelihood of confusion analysis: "whether defendant in adopting its mark intended to capitalize on plaintiff's good will." *EMI*, 228 F.3d at 66. Fortune argues that a jury could construe Victoria's Secret's failure to investigate the possibility that DELICIOUS was being used as a mark as evidence of bad faith. For support, Fortune offers the other portion of Fueroghne's expert testimony, in which Fueroghne opines that "[i]t is standard practice in the advertising and marketing industry . . . to perform at least a cursory search on the Internet and with the United State[s] Trademark Office to see what else is out in the market . . . to avoid possible conflicts or confusion." The district court excluded this evidence for the same reasons it excluded Fueroghne's other testimony, because Fueroghne "is not an expert in any field relevant to this case."

With respect to this portion of Fueroghne's testimony, the district court is plainly wrong. Fueroghne has forty years of experience in the marketing and advertising industry, strongly suggesting that he is familiar with what companies within the industry do when placing words on a product. Fueroghne's expertise, then, is one based on experience. *Cf. Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (concluding that an expert's "significant knowledge of and experience within the insurance industry" provided "the minimal foundation" required to give " 'expert' testimony on the practice and norms of insurance companies in the context of a bad faith claim" (emphasis and quotation marks omitted)). More important, Fueroghne's testimony "will assist the trier of fact . . . to determine a fact in issue," FED. R. EVID. 702, as it supports an inference that Victoria's Secret acted in bad faith. Therefore, we conclude that the dis-

trict court abused its discretion in excluding this portion of Fueroghne's testimony.

On the whole, we think that the evidence of malicious intent on the part of Victoria's Secret, even with Fueroghne's expert testimony, is thin at best. But Victoria's Secret's failure to investigate whether someone held a DELICIOUS trademark, combined with the other evidence discussed above, provides support for a jury's potential finding that Victoria's Secret's carelessness in its use of the word "Delicious" rendered its use of that word "objectively [un]fair." *KP Permanent I*, 543 U.S. at 123.

IV

Finally, Fortune asks us to remand the case to a different judge. Because this case does not present "unusual circumstances," *McSherry v. City of Long Beach*, 423 F.3d 1015, 1023 (9th Cir. 2005), we reject Fortune's request. There is no indication in the record that the district court will be unable to put out of his mind previously expressed views or that reassignment is necessary to "preserve the appearance of justice." *Id.* (quotation marks omitted). Fortune principally relies on the district court's wholesale adoption of Victoria's Secret's proposed findings of facts and law. But although we "reiterate our disfavor of the practice [of] . . . adopting one party's proposed findings of fact and conclusions of law substantially verbatim," *Vuitton Et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 778 (9th Cir. 1981); *see also Silver v. Executive Car Leasing Long-Term*, 466 F.3d 727, 733 (9th Cir. 2006) (remarking on the "regrettable practice of adopting the findings drafted by the prevailing party wholesale"), we decline to impose the "extraordinary measure of reassignment," *McSherry*, 423 F.3d at 1023.

V

This case should go to trial. A jury could reasonably conclude that the majority of *Sleekcraft* factors favors Fortune.

Furthermore, in light of evidence suggesting that Victoria's Secret used the term "Delicious" as a trademark and suggestively rather than descriptively, together with Victoria's Secret's failure to investigate the possibility that DELICIOUS was already being used as a trademark, there remains a genuine issue of material fact as to whether Victoria's Secret used "Delicious" unfairly.

 REVERSED and REMANDED.