**Mike COHN, D.V.M., Plaintiff–Appellant,**

v.

**PETSMART, INC., a Delaware corporation, Defendant–Appellee.**

No. 00–35328.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 2001.

Filed Feb. 12, 2002.

Ken J. Pedersen, Pedersen & Company, PLLC, Boise, ID, for appellant.

John W. Crittenden, Kathryn M. Wheble, Nate A. Garhart, Cooley Godward LLP, San Francisco, CA, for the appellee.

Before: BROWNING, WALLACE, and T.G. NELSON, Circuit Judges.

## OPINION

PER CURIAM.

Dr. Mike Cohn appeals the district court's grant of summary judgment on his claim that Petsmart infringes his trademark "Where Pets are Family." He presents two issues: 1) whether the amount in controversy required for diversity jurisdiction was satisfied, and 2) whether there is a likelihood of confusion in Petsmart's use of Cohn's mark. We hold the amount in controversy requirement was met and that there is no likelihood of confusion between the two marks as a matter of law. Therefore, we affirm.

### I.

In 1993, Cohn opened his Boise veterinary clinic, the Critter Clinic, and began advertising it as a place "Where Pets are Family." In 1994, Petsmart began using the same slogan to promote its national chain of pet supplies stores, including its Boise store. Petsmart received a federal trademark registration for the phrase in 1996; Cohn received a state trademark registration for the same phrase in 1997.

Petsmart does not provide veterinary services. However, beginning in 1992, Dr. Deborah Barton provided pet vaccinations at the Boise Petsmart store on weekends, and since 1994, leased space within the Boise store for a full-service veterinary clinic. Petsmart has advertised that veterinary services are available at "our pet hospital."

Cohn sued Petsmart in Idaho state court for infringement of his Idaho trademark rights. His complaint did not claim a specific amount of damages, but asked for treble compensatory damages, treble the profits derived by Petsmart from the alleged infringement, attorney's fees, and an injunction. Petsmart removed the action to federal court based on diversity of citizenship and an amount in controversy over $75,000. The district court denied Cohn's motion to remand and granted Petsmart's motion for summary judgment, holding that there was no likelihood of confusion. Cohn appeals.

### II.

To support removal based on diversity jurisdiction, Petsmart has the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir.1996); 28 U.S.C. § 1332. Petsmart relies on a single piece of evidence: a letter from Cohn to Petsmart offering to

settle the dispute.[1]  In the letter, he asserted that "the mark is worth more than $100,000 to him" and demanded that amount in compensation.[2]

■ [2]  A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim.[3]  *See Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 428–30 (7th Cir.1997) (plaintiff's settlement offer is properly consulted in determining "plaintiff's assessment of the value of her case"); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir.1994) (while a "settlement offer, by itself, may not be determinative, it counts for something"); *Wilson v. Belin*, 20 F.3d 644, 651 n. 8 (5th Cir.1994) ("Because the record contains a letter, which plaintiff's counsel sent to defendants stating that the amount in controversy exceeded $50,000, it is 'apparent' that removal was proper.").  Cohn could have argued that the demand was inflated and not an honest assessment of damages, but he made no attempt to disavow his letter or offer contrary evidence.  Rather, he consistently maintained that his mark is worth more than $100,000.

■ This evidence is sufficient to establish the amount in controversy.  The heart of Cohn's suit is his request for injunctive and other equitable relief.  "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).  The undisputed evidence shows that Cohn values his trademark rights—the object of the litigation—as worth more than $100,000.  As the amount in controversy exceeded $75,000, the case was properly removed to federal court.

## III.

■ The district court did not err in granting summary judgment on Cohn's claim for trademark infringement.[4]  To

---

1.  Petsmart's notice of removal was deficient because it only summarily alleged that the amount in controversy exceeded $75,000, without alleging any underlying facts to support this assertion.  *See Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir.1992).  In its opposition to Cohn's motion to remand, however, Petsmart explained that the amount in controversy was based on Cohn's settlement demand.  The district court did not err in construing Petsmart's opposition as an amendment to its notice of removal.  *See Willingham v. Morgan*, 395 U.S. 402, 407 n. 3, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969) ("it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits"); 28 U.S.C. § 1653.

2.  The relevant paragraph in the settlement letter reads in full:

    Upon review of my client's records, and evaluating the value of the good will portion of his business, we believe the mark is worth more that $100,000 to him.  Therefore, if your client wishes to continue using the by-line "Where Pets are Family" in my client's market, my client demands $100,000 to compensate him for the expense of establishing a new mark.  Otherwise, my client insists that your client stop using the mark in his area immediately.

3.  We reject the argument that Fed.R.Evid. 408 prohibits the use of settlement offers in determining the amount in controversy.  Rule 408 disallows use of settlement letters to prove "liability for or invalidity of the claim or its amount."  We agree with the district court that Rule 408 is inapplicable because this evidence was not offered to establish the amount of Petsmart's liability, but merely to indicate Cohn's assessment of the value of the trademark.

4.  Petsmart asserts that Cohn made false or fraudulent statements when applying for his Idaho trademark registration, and that this renders the registration invalid.  The district court held that Petsmart waived this affirmative defense by failing to raise it in its answer.  Petsmart has not addressed the district

prove infringement under Idaho Code § 48–512, Cohn must prove that Petsmart's use of "Where Pets are Family" creates a likelihood of confusion with his trademark. We look to federal trademark law for guidance in interpreting the Idaho statute. *See* Idaho Code § 48–518 (stating that federal trademark law is "persuasive authority for interpreting and construing this act").

■ Cohn asserts that Petsmart has used his mark so extensively that consumers are likely to mistake Cohn's clinic as being associated with Petsmart. This alleges a claim for reverse confusion. In such a case, the smaller senior user, such as Cohn, seeks to protect its business identity from being overwhelmed by a larger junior user who has saturated the market with publicity. *See Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir.1998).

■ We examine the eight *Sleekcraft* factors to determine the likelihood of confusion.[5] These factors are flexible, merely guiding the analysis of the overall likelihood of confusion: whether consumers will mistakenly believe that Cohn's clinic is somehow affiliated with or sponsored by Petsmart. *See Dreamwerks*, 142 F.3d at 1129. The parties do not seriously dispute the material facts. Cohn argues, however, that the district court erred in the conclusions it drew from the record and in its ultimate holding that there was no likelihood of confusion as a matter of law. Although we recognized the validity of Cohn's theory in *Dreamwerks*, we agree

with the district court that Cohn has failed to offer sufficient evidence to support it. Therefore, we affirm.

### A.

Two of the *Sleekcraft* factors support Cohn's claim. First, the parties indisputably sell related goods and services: Cohn provides veterinary services and makes ancillary sales of pet supplies, while Petsmart sells pet supplies and offers ancillary veterinary services through Dr. Barton. *See Dreamwerks*, 142 F.3d at 1130.

Second, Petsmart's extensive advertising gives it the ability to overwhelm any public recognition and goodwill that Cohn has developed in the mark. *See Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 n. 2 (9th Cir.2000) ("In a reverse confusion case . . . the inquiry focuses on the strength of the *junior* mark because the issue is whether the junior mark is so strong as to overtake the senior mark.") (emphasis added); *see also A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 231 (3d Cir.2000) ("in a reverse confusion claim, a plaintiff with a commercially weak mark is more likely to prevail than a plaintiff with a stronger mark, and this is particularly true when the plaintiff's weaker mark is pitted against a defendant with a far stronger mark").

Although the mark "Where Pets Are Family" is a laudatory slogan that is not itself particularly distinctive, Petsmart has spent many millions of dollars to promote it through newspaper advertisements, television commercials, and its web site. In

---

court's waiver ruling on appeal, so we do not consider this issue.

5. (1) Strength of the mark; (2) proximity or relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) degree of purchaser care; (7) intent; and (8) likelihood of expansion. *See Dreamwerks*, 142

F.3d at 1129(citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979)). Our analysis of some of these factors, however, is affected by the context of a reverse confusion case. *See Commerce Nat'l Ins. Servs. Co. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 444 (3d Cir.2000).

contrast, Cohn promoted the mark only through local yellow page listings, handbills, occasional advertisements in the local newspaper, and an advertisement in a high school volleyball calendar.[6] Petsmart's ability to saturate the marketplace creates a potential that consumers will assume that Cohn's mark refers to Petsmart, and thus perceive that the businesses are somehow associated.

## B.

Although these two factors raise the potential for confusion, Cohn's evidence fails to create a genuine issue that confusion is "probable, not simply a possibility." *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217(9th Cir.1987). Several other considerations, taken together, undercut Cohn's claim.

First, although the parties superficially use the identical slogan as a trademark, consumers will actually encounter the trademarks differently in the marketplace. A critical factor here is that both parties use the trademark merely as a tagline to their distinctive business names: as "Critter Clinic—Where Pets Are Family," and "Petsmart—Where Pets Are Family." The emphasis on these housemarks "has the potential to reduce or eliminate likelihood of confusion." 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:47 (4th ed.1997). *See Norm Thompson Outfitters, Inc. v. General Motors Corp.*, 448 F.2d 1293, 1298 (9th Cir.1971) (likelihood of confusion mitigated where "the name of the company invariably accompanied the [trademarked] slogan"). The names "Petsmart" and "Critter Clinic" present the dominant commercial identity.

Similarly, although the parties share some overlapping marketing channels, their marketing efforts are concentrated in different media: Cohn obtains most of his customers through yellow pages listings, while Petsmart promotes itself through television advertising, newspaper inserts, and a Web site. More significantly, the advertisements themselves dispel confusion by emphasizing the names "Petsmart" and "Critter Clinic" in the largest, most prominent typefaces, while relegating the taglines to subordinate locations and sizes. *See Walter*, 210 F.3d at 1111(noting that different appearances of marks, when combined with housemark, "negates any similarity").

Third, Cohn presented no evidence of actual confusion.[7] Because evidence of actual confusion can be difficult to obtain, its absence is "generally unnoteworthy" and is given little probative weight. *See Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1050(9th Cir.1999). Here, however, the parties used the same trademark in the same city for six years to market closely-related goods and services. Under these unusual circumstances, some evidence of actual confusion should have become available if Petsmart's coexisting use

---

**6.** Although Cohn's use of the mark is weak, Petsmart does not argue that Cohn's mark is undeserving of protection because it lacks secondary meaning. *Cf. Commerce Nat'l Ins. Servs.*, 214 F.3d at 444 ("in the context of a reverse confusion case, the evidentiary burden upon a smaller, senior user to establish the existence of secondary meaning is placed somewhat lower").

**7.** Cohn received several dozen inquires over the years about whether the parties were related. Without some other evidence of actual confusion, however, these inquiries are too ambiguous to demonstrate actual confusion. *See Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1451 (9th Cir. 1988); 3 *McCarthy* 23:16("[W]hile enquiry evidence is admissible and relevant, standing alone with no other evidence it is insufficient proof of actual confusion.").

had created a genuine likelihood of confusion.[8] *See Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d Cir.1999) (lack of evidence about actual confusion after an ample opportunity for confusion "can be a powerful indication that the junior trademark does not cause a meaningful likelihood of confusion"); 3 *McCarthy* § 23:18.

 Fourth, reasonably attentive pet owners should be particularly attentive in selecting a veterinarian for their family pets, and thus are likely to perceive the differences between Cohn's veterinary clinic and Petsmart.[9] *See Sleekcraft,* 599 F.2d at 353–54.

## C.

Two other factors are relevant but essentially neutral. First, Cohn did not present evidence that Petsmart intended to copy Cohn's mark or that Petsmart should have known of Cohn's senior trademark rights. *Cf. Commerce Nat'l Ins. Servs.,* 214 F.3d at 445; *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 480 (3d Cir.1994). Petsmart conducted a national trademark search before adopting the mark, and Cohn does not claim that the search was inadequate. Petsmart did not become aware of Cohn's use until 1997 when it received his demand letter. However, "absence of malice is no defense to trademark infringement." *Dreamwerks,* 142 F.3d at 1132 n. 12.

Second, the likelihood of expansion poses a negligible risk. The parties already compete closely, both geographically and in the products and services that they offer. There are no foreseeable circumstances that would significantly increase the potential for confusion. *See Brookfield Communications,* 174 F.3d at 1060(likelihood of expansion "is relatively unimportant where two companies already compete to a significant extent").

## D.

This is an unusual case where there is no likelihood of confusion even though the parties use the same mark for similar goods and services. Considering all the factors, there is no evidence that reasonably attentive pet owners would mistakenly affiliate Cohn's veterinary clinic with Petsmart. The parties present distinct commercial identities by placing their greatest emphasis on their unique business names. Cohn's customers will be particularly attentive, and thus more apt to recognize the differences between the businesses. Finally, despite six years of close coexistence, Cohn could offer no evidence that any customers had actually been confused.

We conclude that Cohn's evidence fails to raise a triable issue that confusion is likely, and thus AFFIRM the summary judgment entered in favor of Petsmart.

---

8. Cohn argues that the relevant period for measuring actual confusion only began in November 1998, when Dr. Barton changed the name of her business from a pet "wellness clinic" to a "veterinary clinic." Dr. Barton, however, has provided vaccinations at Petsmart since 1992, and has offered more extensive veterinary services, including pet physicals, declawing, and neutering and spaying, since she began leasing space in the store in 1994. The change in name alone has little bearing on the potential for actual confusion.

9. Rather than consider the perspective of the reasonably prudent consumer, Cohn argues that we should apply a standard of the "least sophisticated consumer." *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 293 (3d Cir.1991). That standard, however, applies only when the plaintiff's products or services are marketed to different categories of purchasers, such as to both professional purchasers and the consuming public. *See Brookfield Communications,* 174 F.3d at 1060; 3 *McCarthy* § 23:100, at 23–234 to 235.