UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

WORLD CHAMP TECH, LLC,

        Plaintiff - Appellant,

v.

PELOTON INTERACTIVE, INC.,

        Defendant - Appellee.

No. 24-2266

D.C. No.
3:21-cv-03202-LB
Northern District of California,
San Francisco

ORDER

Before: CALLAHAN, BADE, and KOH, Circuit Judges.

The memorandum disposition filed on July 25, 2025, is amended, and the amended memorandum disposition is filed concurrently with this order.

The panel has unanimously voted to deny the petition for panel rehearing and to deny the petition for rehearing en banc. The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 40. The petition for rehearing and rehearing en banc is denied.

No further petitions for panel rehearing or rehearing en banc will be entertained.

**FILED**

UNITED STATES COURT OF APPEALS

SEP 18 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

WORLD CHAMP TECH, LLC,

Plaintiff - Appellant,

v.

PELOTON INTERACTIVE, INC.,

Defendant - Appellee.

No. 24-2266

D.C. No.
3:21-cv-03202-LB

AMENDED MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
Laurel D. Beeler, Magistrate Judge, Presiding

Argued and Submitted June 3, 2025
San Francisco, California

Before: CALLAHAN, BADE, and KOH, Circuit Judges.

Plaintiff-Appellant World Champ Tech, LLC ("WCT") has a trademark

registration for "BIKE+" and has produced a mobile app called "Bike+" since

2014. In September 2020, Defendant-Appellee Peloton Interactive, Inc.

("Peloton") released a new version of its home exercise bike called the "Peloton

Bike+." WCT sued for trademark infringement, claiming that Peloton's use of the

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

mark Peloton Bike+ is likely to cause confusion among consumers as to whether Peloton produces or sponsors WCT's Bike+ app. The district court granted summary judgment to Peloton. WCT timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's order de novo and the evidence in the light most favorable to WCT. *See Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159 (9th Cir. 2021). We affirm.

"The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). In a reverse confusion case like this one, "[t]he question . . . is whether consumers doing business with the senior user might mistakenly believe that they are dealing with the junior user." *Id.* at 1130. The analysis is guided by eight factors:

> (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

*Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228, 1252 (9th Cir. 2022) (quoting *Ironhawk Techs.*, 2 F.4th at 1160). "These factors are neither exhaustive nor dispositive; it is the totality of facts in a given case that is dispositive." *Id.* at 1252 (quoting *Ironhawk Techs.*, 2 F.4th at 1160). Accordingly, even when certain

factors weigh in the plaintiff's favor, summary judgment is appropriate if those factors are "overwhelmingly offset" by the remaining factors such that "no reasonable trier of fact could find that confusion is probable." *Id.* at 1261 (citation modified).

That is the case here. The first two factors—mark strength and proximity of goods—weigh in WCT's favor. For the first factor, regardless of whether WCT's Bike+ mark is descriptive or suggestive, a jury could find that Peloton's Peloton Bike+ mark is so commercially strong that it could overtake WCT's mark. *See Ironhawk Techs.*, 2 F.4th at 1162-63. For the second factor, a jury could find that the parties' products are intended for the "same class" of consumers—those who bike as a form of exercise—and are "similar in use and function"—offering users the ability to track metrics while biking. *See id.* at 1164.

But other factors overwhelmingly favor Peloton. Consider the third factor, which turns on the similarity of the marks "as they are encountered in the marketplace." *Lodestar*, 31 F.4th at 1260 (citations omitted). Since WCT ceased paid advertising in 2019, consumers who encounter WCT's mark primarily do so in the Apple App Store. There, Peloton's app may appear alongside WCT's app in search results, but the two apps bear no similarity in appearance, especially because the Peloton app does not use the term "Bike+." Further, although the use of house marks "can aggravate reverse confusion" in some cases, this is not one of

them.  *Ironhawk Techs.*, 2 F.4th at 1165.  Consumers interested in downloading either app from the Apple App Store are presented with the name of the app's developer during that process, thereby reducing the potential for consumer confusion as to who produces each app.  *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002); *see also Lodestar*, 31 F.4th at 1260.  The mark similarity factor therefore favors Peloton.

Next, consider the sixth factor, which asks "whether a 'reasonably prudent consumer' would take the time to distinguish between the two product lines." *Ironhawk Techs.*, 2 F.4th at 1167 (quoting *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005)).  This factor similarly favors Peloton. When WCT applied for its trademark registration, it represented to the United States Patent and Trademark Office that its app "is not acquired through impulse or 'rash' action"; instead, consumers must complete the multi-step process of searching the Apple App Store, selecting the app they are looking for among competitor apps, and then entering a passcode or alternative method of authentication to confirm that they intend to download the app.  Again, during this process, the Apple App Store displays "World Champ Tech" as the producer of the Bike+ app.  Accordingly, a reasonably prudent consumer would identify the Bike+ app as being produced by WCT, not Peloton.  *See Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 718 (9th Cir. 2024) ("[R]egular internet

users can readily distinguish domain names associated with the companies they are searching for from those they are not." (citation omitted)).

Importantly, the fourth factor, actual confusion, also favors Peloton. While WCT has offered an expert survey finding a net confusion rate of 12%, courts generally treat rates below 10% as evidence "that confusion is not likely," 5 *McCarthy on Trademarks and Unfair Competition* § 32:189 (5th ed. May 2025), and rates "between 10% and 20%" as evidence that confusion is likely when "other evidence is supportive," *id.* § 32:188.[1] Here, the other evidence points in the opposite direction. The products have coexisted in the marketplace for years, and hundreds of consumers have downloaded WCT's Bike+ app during that time. Yet WCT has no evidence that any of them has experienced any confusion. *See Lerner & Rowe*, 119 F.4th at 720 (where 109,322 consumers saw the allegedly infringing ads and 7,452 consumers clicked on them, but there were only 236 consumer calls indicating confusion, "[t]he resulting 0.216% confusion rate [was] direct evidence of the likelihood of confusion comparable to, but more complete than, survey evidence"); *Cohn*, 281 F.3d at 842-43.

Collectively, these factors make it such that no reasonable trier of fact could

---

[1]     *Cf. Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1038 (9th Cir. 2010) (triable issue over likelihood of confusion based on expert survey finding 11% net confusion rate *and* disputes of material fact with respect to each of the eight factors).

find that confusion is probable, so WCT's claims fail as a matter of law.[2] *See*

*Lodestar*, 31 F.4th at 1261.

**AFFIRMED.**

---

[2] The remaining factors do not add much to the picture. With respect to the fifth factor, marketing channels, to the extent WCT's website or social media posts continue to generate views without paid promotion, the "shared use of a ubiquitous marketing channel" such as the internet "does not shed much light on the likelihood of consumer confusion." *Lerner & Rowe*, 119 F.4th at 725 (citation omitted); *see also M2 Software v. Madacy Ent.*, 421 F.3d 1073, 1083-84 (9th Cir. 2005). The seventh factor, intent, favors WCT because Peloton was aware of WCT's registered mark, but WCT's limited use of the mark is a "mitigating consideration." *Lodestar*, 31 F.4th at 1260; *see M2 Software*, 421 F.3d at 1085. Finally, the eighth factor, expansion of product lines, is neutral at best for WCT. *See M2 Software*, 421 F.3d at 1085; *Surfvivor Media*, 406 F.3d at 634; *Cohn*, 281 F.3d at 843.